OPINION OF THE COURT
Joseph Jaspan, J.
On September 3, 1980 defendant-respondent Salvatore Castagnaro entered a plea of guilty to criminal sale of a controlled substance in the third degree in full satisfaction of all charges in a seven-count indictment and was thereafter sentenced to an indeterminate term of imprisonment of from 1 to 3 years.
The petitioner District Attorney of Suffolk County now moves pursuant to section 3388 of the Public Health Law for an order declaring forfeit of a 1977 Chevrolet automobile owned by the defendant upon the grounds that said automobile was used by Castagnaro to facilitate the sale of cocaine and methaqualone to an undercover police officer as alleged in the indictment.
*575 At a formal hearing on this motion, the defendant conceded that the ultimate sale of the narcotics occurred in his automobile. However, he contends that an order of forfeiture should not be entered against him since the sale within the vehicle was a mere “technical violation” of section 3388 which did not amount to a “substantially significant connection with [the] criminal activity”. (United States v One 1972 Datsun, 378 F Supp 1200.)
The uncontroverted facts establish that at 8:00 p.m. on February 1, 1980 the defendant met one James Glasso, an undercover police officer, inside a Newmark and Lewis store located in Patchogue, New York. The defendant and Glasso discussed the sale of one-eighth ounce of cocaine and methaqualone in the store and emerged a few minutes later. Castagnaro then suggested that they complete the transaction in his automobile which was located in the adjacent parking area. The participants entered the 1977 Chevrolet and sometime before 8:20 A.M. exchanged the money and narcotics.
The narcotics were on the person of the defendant at the time the exchange was made and were not concealed in the automobile. Officer Glasso further stated that he did not see the defendant drive the vehicle to the Newmark and Lewis parking lot, nor did he see him depart therefrom. The only time that the contraband can be actually placed within the confines of the Chevrolet was during the actual sale thereof.
Section 3388 (subd 1, par [c]) of the Public Health Law provides for an order of forfeiture with respect to any vehicle used “to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, or sale of any controlled substance.”
The question presented is whether the mere use of the vehicle as the site of the prohibited transaction constituted a facilitation of the sale sufficient to invoke the provisions of that statute.
Forfeiture statutes are penal in nature and as such are to be strictly construed against the State and in favor of the individual being proceeded against (McKinney’s Cons Laws of NY, Book 1, Statutes, § 271; Matter of City of *576 Buffalo v Brooks, 3 Misc 2d 492, opn clarified 3 Misc 2d 875, affd 5 AD2d 752; see 44 NY Jur, Penalties and Forfeitures, § 33; cf. New York State Thruway Auth. v Maislin Bros. Transp., 35 AD2d 301).
No reported decisions of the courts of our State have been discovered by this court or cited by the parties as to the meaning of the word “facilitate” as used within section 3388 of the Public Health Law.
The word “facilitate” is a term used in everyday transactions between people. There is no indication that the Legislature intended to ascribe to this word any meaning other than its ordinary one (Rose v Locke, 423 US 48, 49-50; People v Di Raffaele, 100 Misc 2d 634; see Platt v United States, 163 F2d 165), to wit, to make easy or less difficult; to free from difficulty or impediment; to free more or less completely from obstruction or hindrance; to lessen the labor of (United States v One 1950 Buick Sedan, 231 F2d 219; United States v One Dodge Coupe, 43 F Supp 60; Panzer v Horan, 83 NYS2d 887; Webster’s Third New International Dictionary, unabridged).
Similarly, section 115.00 of article 115 of the Penal Law defines the crime of criminal facilitation as engaging “in conduct which provides [another] person with means or opportunity for the commission” of a crime.
The Federal courts, however, have on numerous occasions decided forfeiture cases pursuant to the general forfeiture provisions of the United States Code as found in the Transportation Act (US Code, tit 49, §§ 781, 782). Section 782 of title 49 of the United States Code tracks the language of section 3388 (subd 1, par [c]) of the Public Health Law of this State and provides for forfeiture of any vehicle used or intended to be used “to facilitate the transportation * * * [or] sale” of a controlled substance. (US Code, tit 49, § 781.)
The court notes parenthetically that section 782 of the Transportation Act was broadened in 1970 by section 881 (subd [a], par [4]) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (US Code, tit 21, § 881, subd [a], par [4]) to provide for forfeiture of a vehicle *577 which is used “in any manner to facilitate the * * * sale” (emphasis added) of controlled substances and has been construed to require only the most minimal of contacts between the use of a vehicle and a sale of narcotics as a predicate of forfeiture (United States v One 197U Cadillac Eldorado Sedan, 548 F2d 421). This amendment does not provide resource material for the instant case since it no longer is similar to section 3388 of the Public Health Law.
Cases interpreting sections 781 and 782 of the Transportation Act (US Code, tit 49, §§ 781, 782) which do parallel the New York statutes under consideration have been construed to require a showing that (a) the contraband, no matter how minute in quantity, was intentionally transported or concealed in the vehicle (United States v One 1971 Porsche Coupe Auto., 364 F Supp 745; see United States v Oldsmobile Coupe Auto., 67 F Supp 686); or (b) that the vehicle was used as a lookout or decoy vehicle in a convoy (United States v One 1952 Lincoln Sedan, 213 F2d 786; United States v One Dodge Sedan, 28 F2d 44); or (c) that the vehicle was used as a place for conducting negotiations for or transacting any portion of a sale (United States v One 1950 Buick Sedan, 231 F2d 219, supra; United States v One 1950 Chevrolet 4-Door Sedan, 215 F2d 482).
Inherent to a finding that a forfeiture should be ordered where a vehicle is used to conduct any portion of a sale is the underlying fact that such use of a vehicle would serve to inhibit surveillance of the illicit.aspects of the criminal activity (United States v One 1972 Datsun, 378 F Supp 1200, 1202, n 5, supra).
In United States v One 1950 Buick Sedan (supra), the court ordered a forfeiture where the facts established that the arrangements for the narcotics sale and the handing over of the purchase money occurred in the automobile.
In United States v (One) (1) 1971 Chevrolet Corvette Auto. (496 F2d 210), the court held that forfeiture should not be ordered with respect to a vehicle driven only five blocks to a second car which was then used to complete the sale of narcotics. The court wrote (p 212): “ ‘[W]hether any particular connection of a vehicle with contraband, where the contraband is not in the vehicle or in the posses *578 sion of the occupant of the vehicle, constitutes facilitation, is a question of degree, which is in turn a question of fact not readily susceptible to generalization.’ United States v One Dodge Coupe, 43 F Supp 60, 61 (S.D.N.Y. 1942). It is commonly stated that any use of an automobile that ‘makes easy or less difficult’ or ‘lessens the labor of’ the handling of contraband constitutes facilitation”.
In United States v One 1971 Porsche Coupe Auto. (364 F Supp 745, supra), the court ordered forfeiture of a vehicle where the claimant’s son, who had become addicted to drugs while serving with the Marine Corps in Vietnam, was observed throwing two glossine packets of heroin from the vehicle. In rejecting the claimant’s argument that forfeiture is limited to cases of trafficking in substantial amounts of narcotics, the court stated (p 749):
“The statute [US Code, tit 49, §§ 781, 782] clearly requires forfeiture where any contraband article has been physically within the vehicle. * * *
“Forfeiture under such circumstances is harsh, but as the Court of Appeals * * * noted in an earlier forfeiture case, ‘however sympathetic we may be, we are bound when Congress, in the proper and prudent exercise of its authority, has spoken.’ ”
In Platt v United States (163 F2d 165, supra), the court refused to order a forfeiture of a vehicle used by one Blanche Cooper, a drug addict, to go to the drug store to obtain morphine. The court found that the vehicle merely enabled the defendant to get to the drug store, but did not facilitate the purchase of morphine. In so concluding, the court held (p 167): “The word ‘facilitate’ appears in many federal statutes. In none of them is it defined, but the presumption is that when Congress used this word, it ascribed to it its ordinary and accepted meaning. What is then meant by the use of the word ‘facilitate’ is that if an automobile is used to assist in the commission of the crime, it is subject to forfeiture. The crime charged here was the illegal purchase of narcotics. The use of the automobile did not make the accomplishment of the purchase more easy or free it from obstructions or hindrance, or make the sale any less dif *579 ficult. It was merely the means of locomotion by which Blanche Cooper went to the store to make the purchase. Its use enabled her to get to the store more quickly than if she had walked or had used a slower means of transportation. But the argument that this facilitated the purchase disregards the ordinary and accepted meaning of the word when applied to the sale. Ascribing such a meaning to the use of the word ‘facilitate’ would raise grave doubts as to the constitutionality of the statute on the ground of vagueness and indefiniteness. The means employed by Blanche Cooper in going to the store had nothing to do with the purchase. The ease or difficulty of the purchase would have been the same no matter how she got there.”
In United States v One 1972 Datsun (378 F Supp 1200, supra), the court, after citing the above cases as well as numerous other cases (interpreting US Code, tit 49, §§ 781, 782), both granting and denying forfeitures upon a theory of facilitation, stated (pp 1203-1204) : “Although this manner of stewardship [to wit, deciding each case on its own facts] does not easily lend itself to synthesis, one major principle seems to emerge from all the cases: to be forfeited, a vehicle must have some substantial connection to, or be instrumental in, the commission of the underlying criminal activity which the statute seeks to prevent. In other words, it is appropriate in every forfeiture case to ask ‘whether the use of the car as established by the record [is] so connected with the allegedly illicit [activity] as to subject the car to forfeiture.”
In United States v United States Coin & Currency (401 US 715, 721), the court wrote: “[w]hen the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal [activity].”
In United States v One 1974 Cadillac Eldorado Sedan (548 F2d 421, 426, supra), the court in construing the more extensive forfeiture provisions of section 881 (subd a, par 4) of title 42 of the United States Code (quoted supra) stated: “If the purpose of the statute is, as Congress indicated, to reduce the profits of those who practice this nefarious profession, we are loathe to make the forfeiture *580 depend upon the accident of whether dope is physically present in the vehicle.”
In the instant case, the defendant suggested that his automobile be used to complete the sale, ostensibly for the purpose of concealing the exchange from the presence of others and particularly undercover officers who might be patroling that area.
I find that there is a substantial nexus between the agreement to sell the drugs and the use of the vehicle to effectuate the ultimate exchange. The reasonable conclusion to be drawn from the facts presented is that the defendant intended to use his automobile to facilitate the completion of the sale of controlled substances and except for the fact that he was dealing with an undercover police officer would have been successful.
The defendant also contends that forfeiture should not be ordered since his wife is an equitable owner of the automobile and did not know or intend the vehicle to be used in connection with an illegal narcotics transaction.
Section 3388 (subd 6, par [a]) of the Public Health Law provides: “Forfeiture shall not be adjudged where the owners establish by a preponderance of the evidence that: (a) the use of such seized property, in violation of subdivision one of this section, was not intentional on the part of any owner” (emphasisadded).
The defendant contends that his wife is an equitable owner since she used the vehicle 50% of the time to perform her duties as household manager, parent, spouse and working wife. She also urges that since she had contributed her earnings to the household, she has made possible the early discharge of a purchase-money automobile loan.
The vehicle in question was registered to the defendant and not to his wife. She does not claim nor does she have a lien upon the car, thus distinguishing this case from Matter of City of Buffalo v Brooks (3 Misc 2d 492, opn clarified 3 Misc 2d 875, affd 5 AD2d 752, supra); People v Kreichman (45 AD2d 697, revd on other grounds 37 NY2d 693); and Blaine v G.M.A.C. (82 Misc 2d 653), cited by respondent. *581 Nor is it alleged that the vehicle was actually owned by her and registered in the name of her husband.
Her claim of equitable ownership is largely based upon the implications of the new equitable distribution statute applicable to matrimonial actions commenced since July 19, 1980 (see Domestic Relations Law, § 236, Part B).
However, that statute does not provide that both spouses are to be considered as equitable owners of all marital property. Rather, section 236 (Part B, subd 5) of the Domestic Relations Law provides that “in an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage, * * * [the court] shall determine the respective rights of the parties in their separate or marital property” (emphasis added).
In so determining the “respective rights” the court must consider some 10 statutory criteria including “any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker” (Domestic Relations Law, § 236, Part B, subd 5, par d, cl [6]).
This consideration, however, does not mandate a conclusion by the court that the nontitled spouse is an owner of the property. The determination is made primarily for the purpose of ascertaining the equitable shares on all marital assets to which each of the spouses will be entitled upon the dissolution of the marriage. There is no requirement that the court must order a transfer of title with respect to specific property, only that the property be equitably distributed as between the parties.
Moreover, any rights which a spouse may have to an equitable distribution of property do not accrue until one of the parties commences an action to dissolve their marriage.
Accordingly, I find that section 236 of the Domestic Relations Law does not mandate a finding by this court that *582 the defendant’s wife is an equitable owner of the seized vehicle.
The petitioner’s application for an order of forfeiture is granted. The 1977 Chevrolet automobile, Identification No. 1H57U7B562204, Registration No. 150-GXJ is hereby declared to be forfeit.
Pursuant to subdivision 7 of section 3388 of the Public Health Law, the District Attorney may retain such vehicle for official use or sell said vehicle at a public sale pursuant to that subdivision.